# KETCHUM COAL CO. v. CHRISTENSEN,
## District Judge, et al.

No. 2942.   Decided July 1, 1916.   (159 Pac. 541.)

1. MANDAMUS—PLEADING—ANSWER. A defendant in a mandamus proceeding may file an answer and raise issues of fact, and, when he does so, the Supreme Court may refer such issues to the district court for a hearing and findings thereon; but when the question presented to the Supreme Court turns upon the facts admitted by a demurrer in the district court and the only question is whether upon such facts the judgment of the district court should not have been in favor of the application, the defendant may not for the first time deny the truth of the facts in the Supreme Court.   (Page 219.)

2. JURY—RIGHT TO JURY TRIAL—MANDAMUS. Upon questions of fact raised in a mandamus proceeding, either party is entitled to a jury trial under the statute.   (Page 219.)

3. EMINENT DOMAIN—ENFORCEMENT OF JUDGMENT—FORM OF PROCEEDING—RELIEF—CONTEMPT. An application to the district court, though in form an application to punish defendant for contempt of court, the sole purpose of which was the enforcement of the order or judgment of such court entered in a condemnation proceeding, giving plaintiff possession of a strip of ground for a mine tramway was not a proceeding for the sole purpose of enforcing respect for the court's order or judgment, but to require the court to protect a right based upon the judgment.   (Page 220.)

4. MANDAMUS—ENFORCEMENT OF JUDGMENT. Where a judgment can be enforced merely by issuing a writ of execution, a mandate will issue to require the execution to issue.   (Page 221.)

5. MANDAMUS—RELIEF—MATTERS OF DISCRETION. The Supreme Court may not by means of a writ of mandate control or direct the discretion of an inferior court.   (Page 221.)

6. MANDAMUS—RELIEF—PROCEEDING WITH CAUSE. In a case which has not proceeded to judgment, an inferior court may merely be compelled to act or go forward in case it refuses or fails to do so.   (Page 221.)

7. MANDAMUS—RELIEF—ENFORCEMENT OF JUDGMENT. Where a coal company instituted a condemnation proceeding in a district court and obtained an order or judgment giving it posses-

sion of the surface of a strip of ground owned by defendant companies for use for the construction of a tunnel and tramway, and, after it had partly constructed the tramway, applied to the district court for an order against defendant companies and their employees to show cause why they should not be adjudged guilty of contempt in interfering with the construction of the tramway and be required to obey the condemnation judgment, and the court sustained the demurrer, the Supreme Court, on original application for mandamus, might issue its mandate requiring that the condemnation judgment be enforced, since the enforcement of the judgment was a duty of the district court, and not a matter of its discretion. (Page 221.)

8. MANDAMUS—REMEDY BY APPEAL OR WRIT OF ERROR. A writ of mandamus may not be issued as a substitute for a writ of error or the right of appeal, and the court may not have recourse to the writ merely because there is no other remedy. (Page 224.)

Mandamus by the Ketchum Coal Company against A. H. Christensen, Judge of the District Court of Carbon County, and others.

Permanent writ of mandamus ordered to issue.

*Boyd, De Vine & Eccles, E. A. Walton* and *T. D. Walton,* for plaintiff.

*M. P. Braffet, Van Cott, Allison & Riter,* and *Dickson, Ellis, Ellis & Schulder,* for defendants.

FRICK, J.

The plaintiff, a corporation, filed its application in due form in this court praying for an alternative writ of mandate against the defendants named in the title. The facts upon which the application aforesaid is based, and which facts were stated in an application to the district court of Carbon County, Utah, as hereinafter made to appear, in substance are as follows:

The plaintiff is a corporation and is the owner of a partially developed coal mine and is endeavoring to mine coal and to place the same on the market for general use. The Pleasant

Valley Coal Company and the Utah Fuel Company are likewise corporations owning coal mines adjacent to the plaintiff's mine which mines are developed and said companies are engaged in mining and selling coal for general use. The defendants Cowie and Thompson are employees of said companies, and in the matters hereinafter stated acted under the direction of and for said companies, and the defendant Hon. A. H. Christensen is the judge of the district court of Carbon County, Utah. In the year 1913 the plaintiff, in a condemnation proceeding duly instituted under our statute against the defendant coal companies, obtained an order or judgment giving it possession and occupancy of the surface of a strip of ground owned by said companies 60 feet in width by about 1,300 feet in length. The purposes for which possession of said strip of ground was obtained and ordered by the court, and the character of said possession, are stated in the order or judgment aforesaid as follows:

"Said occupancy is for the use of said strip of land for the driving and construction of a tunnel or tunnels for the laying of the necessary tracks and for the construction and operation of a tramway or tramways and for the purposes and uses as in said complaint set forth as indicated on map attached to said complaint marked Exhibits A and C. The plaintiff is given the exclusive possession of the entire strip above described with this exception: At the point of intersection of plaintiff's proposed tramway with the Willow Creek tramway of the Pleasant Valley Coal Company, the plaintiff is only given the right to construct its tramway beneath the Willow Creek tramway at such point of intersection and in such a way as not to endanger the Willow Creek tramway or impair its strength or stability and the safe operation of cars thereover. Should any controversy arise between the parties as to the safe and proper manner of constructing the plaintiff's tramway beneath the Willow Creek tramway, the matter shall be referred to the court or judge at chambers at any place within the district on three days' notice to the opposite party. When the plaintiff is ready to construct its tramway beneath the Willow Creek tramway it shall so notify the Pleasant Valley Coal Company which is hereby given the right to have

a representative present when construction work is going on to see that the Willow Creek tramway is properly protected.''

Pursuant to that order, the plaintiff took immediate possession of the strip of ground and constructed a temporary tramway thereon and shipped some coal. In January, 1916, the plaintiff made preparation to construct a permanent tramway, or, what is termed in said application, ''a permanent tramline'' for the purpose of reaching the Denver & Rio Grande Railroad Company's tracks with said line so that plaintiff could transport the coal mined in its coal mine over said strip of ground by means of said tramline to such railroad tracks, to be there loaded upon the cars of said railroad company for transportation. The plaintiff, in the application to the district court aforesaid, sets forth specific acts of interference by the defendant coal companies through their employees aforesaid and that by such acts of interference said defendants are actually preventing the plaintiff from transferring the necessary lumber and material to be used in the construction of said tramway from the railroad tracks of said Denver & Rio Grande Railroad Company to said strip of ground, which lumber and material are intended to be used in the construction of said permanent tramway or tramline for the purposes aforesaid. The plaintiff, in the application to said district court, also alleged other acts of interference as follows:

''That, notwithstanding the opposition of the defendants, the plaintiff has, to a considerable extent, developed its coal mine and shipped some coal, and is now able to produce without delay large quantities of coal for which it has orders to the amount of thousands of tons, and the plaintiff's work and mining operations are, and have been, suspended since the last day of April, 1916, wholly by reason of their improper and unlawful maintenance by the said Pleasant Valley Coal Company and Utah Fuel Company of several electric and power lines and wires over, upon, and across the said 60-foot strip of land at an elevation substantially the same distance from the surface of the ground as the tracks of plaintiff's proposed tramline; that said wires and electric lines to the number of about five (5) were placed across said premises

long after the order of occupancy referred to in the original affidavit was granted, and a new pole line was erected by said defendants to carry said wires long after said order of occupancy was made and without the consent of the plaintiff; said lines and wires were so placed and constructed and maintained as to interfere with and prevent the construction and completion of plaintiff's said tramline, and said tramline and trestle therefor was, on or about the 1st day of April, 1916, completed and constructed up to the close vicinity—within five (5) feet—of said wires, and plaintiff cannot proceed further with the construction of its said tramline, by reason whereof plaintiff's work is at a standstill, and said condition has existed since the 1st day of April, 1916, to the great loss and damage of the plaintiff.  *  *  *  Affiant further states that it is readily practicable to either put the said wires in conduits or to elevate the same so as not to interfere with the plaintiff's said work or the defendants' use of the same; that the same can be elevated at an expense of $50 or less."

Upon the foregoing facts the plaintiff asked the district court aforesaid to issue an order directed to said defendant coal companies and to said Cowie and Thompson, their employees, as aforesaid, to show cause why they should not be adjudged guilty of contempt and that they be required to "obey and respect said order" (the order giving plaintiff possession of said strip of ground). An order, as prayed for, was duly issued by said court and served on said coal companies and said employees. They appeared by their counsel and entered a general demurrer to the application. Upon a hearing, on the 25th day of April, 1916, said demurrer was sustained by said court. The plaintiff then presented its application to this court in which all the foregoing facts, with others, are set forth and in which application it prays "that a writ of mandate issue to the end that said judgment (the order or judgment giving plaintiff possession of said strip of ground) be enforced."

This court issued an alternative writ of mandate directed to all the defendants to which they interposed a motion to quash upon substantially the following grounds. (1) That the facts stated in the application for the writ do not entitle

the plaintiff to the relief prayed for "or to any relief;" (2) that this court is "without jurisdiction to control or in any way direct the lower court in the exercise of its jurisdiction and discretion to judicially determine the matters and things referred to in said affidavit;" and (3) that it affirmatively appears from said application that the district court "exercised its jurisdiction and judicially determined the questions presented to it * * * on the hearing of the contempt proceedings referred to in said affidavit." With the motion to quash defendants have also filed an answer in which, while admitting all the allegations of inducement stated in the application to this court, they nevertheless deny some of the allegations which were contained in the affidavit filed in the district court of Carbon County and to which they had demurred, and which demurrer was sustained as before stated. The denials, therefore, merely attempt to raise an issue upon the facts stated in the application to the district court and not to the facts which confer jurisdiction upon this court in a proceeding of this character.

While in a mandamus proceeding a defendant may file an answer and raise issues of fact, yet, when he does so, this court may refer the issues of fact to the district court for a hearing and findings thereon. Upon questions of **1, 2** fact either party is entitled to a jury trial in such a proceeding under our statute. When, however, as in this case, the question presented to this court must turn upon the facts that were admitted by the demurrer in the district court, and the sole question is whether, upon the conceded facts, the judgment of the district court should not have been in favor of the application, then the defendant may not, for the first time, deny the truth of the facts in this court which were admitted in the district court and upon which that court entered judgment. For the purposes of this proceeding, the defendants must stand or fall upon the demurrer filed in the district court. If they desired to raise an issue of fact they should have filed an answer in the district court and not stood on their demurrer as they did. In view of the conclusions reached, however, we desire to state here that after this case gets back to the district court the defendants may, by leave

of that court, file an answer and may raise such issues of fact as they may be advised, but they may not do that here and by that means prevent this court from passing judgment upon the questions presented by the application in the court below which questions were based upon facts admitted by the demurrer. If any other rule were adopted this court could always be prevented from directing the enforcement of the judgment of inferior courts. We shall therefore limit our discussion to the motion to quash the application, the legal effect of which is the same as though a general demurrer had been interposed.

The motion to quash is based upon three grounds, which we have hereinbefore set forth. In our judgment there is no merit to the first ground stated in the motion to quash, and we shall therefore devote no time to that ground.          **3** The real questions arise upon the second and third grounds of the motion. Those two grounds may, however, be considered together. The first question to be determined, however, is, What was sought to be accomplished by making the application to the district court? While it is true that in form the application was one to punish for contempt of court, yet, in its essence, the sole purpose of the application was the enforcement of the order or judgment entered in the condemnation proceeding giving plaintiff possession of the strip of ground hereinbefore referred to for the purposes before stated. It was therefore not a proceeding instituted for the sole purpose of vindicating the dignity of and enforcing respect for the court's order or judgment, but was for the purpose of enforcing a right based upon the order of judgment aforesaid. When, therefore, we look beyond the mere form of the proceeding, that is, the application to punish the defendants as for a contempt, it becomes quite apparent that the application both in fact and in law was for the sole purpose of enforcing the judgment or order of the district court in the condemnation proceeding. In other words, the real purpose of the application was to require the court to protect and enforce plaintiff's rights under the order or judgment. The Supreme Court of California, in a similar

proceeding entitled *Merced Min. Co.* v. *Fremont,* 7 Cal. 130, states the proposition thus:

"It is true that the proceeding is in form a case of contempt, while it is in substance a private right."

This is precisely the situation here. It is manifest, therefore, that the real purpose of plaintiff's application in the district court was to require that court to enforce its order or judgment which was being violated and disregarded by the defendants, and, that court having, upon the conceded facts, refused to do so, the application to this court is to require the district court to enforce its judgment.

It has become elementary that mandamus is the proper remedy to require inferior courts to enforce their judgments. If a judgment can be enforced by merely issuing a writ of execution a writ of mandate will issue to require the execution to issue. All judgments can, however, **4-7** not thus easily be enforced. Whatever may be the proper method of enforcement, however, the court in which the judgment was entered and where it remains in force and effect may, by mandamus, be coerced to pursue that method for the enforcement of its judgment. The proposition, therefore, that was so earnestly argued by defendants' counsel at the hearing upon the motion to quash, namely, that this is a case where the district court in passing upon the demurrer had exercised its discretion and jurisdiction and that mandamus will not lie in any case where an inferior court has acted and exercised its discretion, does not apply. True, a demurrer was interposed to the application and the district court acted upon it and entered an order or judgment sustaining the demurrer. Now, if such had occurred in any pending case where the questions respecting the ultimate rights of the parties before the court were still in litigation, that is, still undetermined, then the contention of defendants' counsel would be sound. This court may not, by means of a writ of mandate, control or direct the discretion of an inferior court, however humble that tribunal may be. In any case, therefore, which has not proceeded to judgment, the inferior court may merely be compelled to act or go forward in case

it refuses or fails to do so, but its judicial acts or discretion may not be controlled to any extent by a superior court by a writ of mandate. If, however, in any matter in litigation or dispute of which the inferior court has jurisdiction, it has regularly proceeded to judgment and has judicially determined and declared the rights of the parties to the proceeding, then the court may not exercise its discretion with regard to whether it will or will not enforce a judgment thus regularly entered. When the judgment is once entered, and under the law is an enforceable judgment, the party in whose favor it is rendered has a clear right to have the same enforced, and if any one attempts to interfere with that right it is also the clear legal duty of the court, in case a proper application is made, to enforce the judgment. It may be said, however, that in such a case an application of some kind must be made to the court, and that that court must exercise some discretion regarding the sufficiency of the application. That no doubt is true. It is, however, true only to a limited extent and that court may not arbitrarily or capriciously, or for any reason except a sufficient legal reason, refuse to act when the fact is conceded that the enforcement or the enjoyment of the fruits of the judgment, as the case may be, is denied. To permit such a course would be tantamount to permitting a court to enter a judgment but thereafter deny its enforcement. When, therefore, as in this case, it is admitted by the demurrer that a judgment was duly and regularly entered; that the same is in full force and effect; that the respondents had interfered and are persisting in interfering with the plaintiff in its right to enjoy the fruits of the judgment, then the court may not say that it will not enforce the judgment. Under such circumstances the law gives plaintiff the right to have the judgment enforced and imposes the duty upon the court to enforce it, and no discretion is vested in the court whether it will enforce it or not.

The following authorities discuss and apply the principles we have discussed thus far: *Merced Min. Co.* v. *Fremont, supra; Raleigh* v. *District Court,* 24 Mont. 306, 61 Pac. 991, 81 Am. St. Rep. 431; *Montgomery* v. *Judge,* 100 Mich. 436, 59 N. W. 148; *Crocker* v. *Conrey, Judge,* 140 Cal. 213, 73 Pac.

1006; 2 Spelling, Ex. Rem., Sec. 1418; *State* v. *Kansas City Court of Appeals,* 97 Mo. 331, 10 S. W. 855, 3 L. R. A. 482; *People* v. *District Court,* 46 Colo. 386, 104 Pac. 484, 24 L. R. A. (N. S.) 886, 133 Am. St. Rep. 84. The last case referred to is a case precisely like the case at bar. In that case the district court of Jefferson County, Colo., in a condemnation proceeding, like the district court in this case, had entered a judgment condemning a certain strip of ground and had given the condemner the right of possession. When that right was disputed, however, and the condemner had made application to have his rights enforced, the court, the same as here, refused to enforce the judgment. Application was therefore made to the Supreme Court of Colorado for a writ of mandate to require the lower court to enforce the judgment of condemnation. In the course of the opinion the Supreme Court of Colorado, in referring to the duty of the lower court to enforce the judgment, says:

"Instead of issuing a proper writ (a writ of mandate) for the prompt and efficient enforcement of its clear and unequivocal decree, without jurisdiction or authority, as it seems, it attempts by its order, upon the relator's application for such writ, to modify the force and effect of that solemn and binding judgment, in which all parties acquiesced. The duty of the court to grant an order for the writ prayed was and is clear, and the right of the relator to have it equally plain. Its issuance involves the exercise of no judicial discretion; it was and is an order to which the relators were and are entitled as a matter of right. It is a mockery of justice to give one a judgment and then deny him the means of its enforcement. Every court has the inherent power and authority, and upon it rests the duty of enforcing its own judgments and decrees by proper orders and directions to ministerial officers to that end. Were it otherwise, judgments and decrees of courts would be empty and meaningless things, just as this judgment and decree in condemnation is, if incapable of enforcement. The relators have no other plain, speedy, or adequate remedy, and the court below has no discretion whatever, except to issue the writ prayed for by the relator, and to which prayer that court turns an unheeding ear."

The foregoing case is also cited in State ex rel. *Shaw* v. *Thompson,* 21 N. D. 428, 131 N. W. 231.

We have taken the liberty to quote thus liberally from the opinion in that case for the reason that it completely fits

the case at bar. The same doctrine, although in a somewhat different case, is stated by Mr. Chief Justice Sherwood in the case of *State* v. *Kansas City Court of Appeals, supra*. The Chief Justice, in concluding the opinion, says:

"Taking the admitted facts of this cause into consideration, the duty of the respondents (the court) was prescribed by law.  *  *  * This duty admitted of no discretion, at least not of such an exercise of that discretion as would place it beyond the 'superintending control' of this court."

Broadly speaking, superior courts never control nor attempt to direct inferior courts or tribunals before judgment while acting merely judicially or in matters of discretion. After judgment, however, when the inferior court or tribunal has exhausted its discretionary powers, the superior court will compel the enforcement of judgments, regardless of the nature or character of the proceeding. Before an action has proceeded to judgment there ordinarily are ample statutory remedies provided for the correction of errors of judgment and for an abuse of discretion. No such remedies are, however, necessary after judgment, since, when that point is reached, judicial discretion ends and it then becomes the duty of the courts to enforce their judgments, and if they refuse or neglect to do so mandamus will lie to compel them to discharge the duty, which is one imposed by law. Any other course would compel men, in vindicating their legal rights, to have recourse to the primitive methods of applying brute force. Courts are instituted to prevent recourse to such methods. But if courts can successfully refuse to do their duty they merely invite men to have recourse to such methods.

Counsel for defendants have cited and rely upon *State* v. *Wright*, 4 Nev. 119, 251, *Ex parte Newman*, 14 Wall. 152, 20 L. Ed. 877, and other similar cases in which it is held that a writ of mandate may not be issued as a substitute for the writ of error or the right of appeal, and that the court may not have recourse to the writ merely because there is no other remedy. There is no doubt of the soundness of the propositions decided in those cases and we do not have the slightest inclination either to avoid or to depart from the

wholesome doctrine there announced.  The doctrine, however, has no application here.  In requiring the district court of Carbon County to act upon the conceded facts and to proceed to enforce its judgment, we are merely enforcing an old and well-established remedy.  There is neither a usurpation of power nor a substitution of remedies in what we are directing to be done.  Upon the facts stated in the application to the district court, all of which are repeated in the application to this court, and which were admitted by the demurrer filed in the district court, it is the duty of this court to direct the district court of Carbon County to enforce its judgment giving plaintiff possession and occupancy of the strip of ground described in the judgment.  By that judgment plaintiff is given possession of the strip of ground for the purposes of constructing a tramline and other things connected therewith.  For such purposes our statute expressly authorizes the exercise of the right of eminent domain.  Any interference with the plaintiff in its possession for the purposes aforesaid constitutes an interference with the judgment and cannot be tolerated.  If the defendants may hamper or prevent the plaintiff from having and enjoying possession of the strip of ground for the purposes stated in the judgment, then they may prevent it from using it at all and they may thus defeat the wholesome purposes of our statute.  Moreover, the plaintiff is not only entitled to the unmolested possession of said strip of ground, but it may not be interfered with in taking material to and placing it onto said strip for the construction of the tramline and other improvements.

It is therefore ordered that a permanent writ of mandate issue directing the district court of Carbon County to reinstate the contempt proceedings and to overrule the demurrer and to give the defendants a reasonable time, not exceeding ten days, to file an answer to the application.  In case they file an answer in which any issue of fact is raised, the court is directed to hear and determine the ultimate facts under the provisions of our statute and to enter judgment accordingly.  If, upon the other hand, the defendants present no issue of facts as aforesaid, or if upon a hearing it be found that the defendants are interfering with the plaintiff in its

possession and occupancy of such strip of ground or in making the improvements thereon contemplated by the order or judgment entered in the condemnation proceeding, or any of them, then said court is directed to forthwith proceed to enforce the order or judgment giving plaintiff possession of said strip of ground and to restrain the defendants, and all persons acting through or under them, from interfering with the plaintiff in that possession and in making the improvements aforesaid, and to impose such penalties and costs upon the defendants, or on some of them, as to the court may seem proper. Applicant to recover costs in this court.

STRAUP, C. J., and McCARTY, J., concur.