TAYLOR NATIONAL, INC., Plaintiff, Appellant, and Cross-Respondent,

v.

JENSEN BROTHERS CONSTRUCTION COMPANY, a corporation, Defendant, Third-Party Plaintiff, and Respondent,

v.

Jesse R. HARRISON and William J. Soule, dba Value Realty and Leon Harward, Third-Party Defendants, Third-Party Plaintiffs, Counterclaimants, Respondents, and Cross-Appellants,

v.

Paul H. TAYLOR, John Does I through IV, whose true names are unknown, agents of Jensen Brothers Construction Company, a corporation, Third-Party Defendants,

Leon HARWARD, Third-Party Defendant and Third-Party Plaintiff,

v.

TAYLOR NATIONAL, INC., Plaintiff, Third-Party Defendant, and Appellant.

Nos. 17074, 17091.

Supreme Court of Utah.

Feb. 2, 1982.

**152**

Jackson Howard, Provo, for Taylor.

Stephen Roth, Salt Lake City, for Jensen.

R. William Bradford, Salt Lake City, for Harrison, etc.

## CORNABY, District Judge:

Plaintiff Taylor National, Inc. (hereinafter "Taylor"), a real estate broker, brought action to collect $8,400 as its commission for the sale of a house under a listing agreement executed by defendant Jensen Brothers Construction Company, a corporation (hereinafter "Jensen"), the owner of the property and contractor for the construction of the house. The listing agreement provided for payment of attorney's fees by a breaching party.

Jensen counterclaimed against Taylor alleging breach of contract, or in the alternative, to have the listing agreement declared void. Jensen also brought a third-party complaint against Harward, the buyer of the property, together with the principals of Value Realty, for whom Harward worked as a real estate agent, to recover the amount of any real estate commission which Taylor might recover against Jensen. Harward filed a third-party complaint against Taylor and Jensen for rescission or reformation of the sales contract and for damages for breach of implied warranty of habitability of the house.

The property at issue here is a house built as a part of the 1977 Homeshow in Utah County. Taylor, who owned the lot, contacted Jensen and negotiated the construction of one of the houses, known as the Barrington House. These parties agreed that Jensen would construct the house and own the property, while Taylor would participate in the profits by acting as broker on sale of the house.

Jensen signed a listing agreement with Taylor whereby Taylor would be entitled to a six percent commission on the sale of the house. Taylor supplied real estate agents to be present in the house during the home show in August, 1977, but did not attract a buyer.

In September, 1977, after the home show, Harward, a real estate salesman employed by Value Realty and named with the owners of Value Realty as third-party defendant, contacted Jensen and offered to purchase the house. Jensen advised Taylor of the potential buyer and asked Taylor to contact Harward. Harward was informed that Taylor was the listing agent. Neither Harward nor Taylor contacted each other. In mid-October, 1977, Harward informed Jensen that unless an earnest money agreement was entered into without further delay, he would purchase another house. Jensen and Harward signed the earnest money agreement on October 19, 1977. Taylor was informed of the agreement. Still Taylor did not contact Harward, and neither Harward nor Value Realty contacted Taylor. The sale was closed in accordance with the earnest money agreement on December 9, 1977. At the closing, the six percent sales commission, amounting to $8,400, was deducted from the sale proceeds and the balance delivered to Jensen. Harward held the commission as an agent on behalf of Value Realty, until Taylor and Value Realty could agree on a split of the commission.

Harward claims that Jensen agreed to accept a trade of equity for Jensen's interest in the Barrington House. However, since no written transaction concerning the trade had been entered into as of the December 9, 1977, closing date, Harward executed a trust deed on the Barrington House, together with a note in the amount of $45,600. Harward says it was not intended that he pay this note, but that it be redeemed when Harward found suitable real property for the trade. Jensen sent him notice of default on July 13, 1978.

In the meantime, Harward moved into the Barrington House and found that the roads in the subdivision had not been properly installed and began to deteriorate. The city of Orem had not accepted the subdivision and did not maintain the roads. Also, the Barrington House began to settle. Large cracks appeared in the walls and garage floor and the fireplace pulled away from the wall. It is on these facts that

Harward claims damages for breach of warranty and for fraud.

The trial court found that Jensen had paid the six percent commission in good faith at the time of closing on the sales contract; that Taylor failed to take reasonable measures to protect its commission from the third-party defendants; that Taylor failed to exercise its fiduciary responsibilities to its seller Jensen; and "in equity and good conscience waived and is otherwise estopped from recovery of a second real estate commission against Jensen or from recovery of an attorney's fee against Jensen incident to collection of any sales commission owing to Taylor except as may be recovered through Jensen from third-party defendants Harward, Harrison and Soule." The court further found that Jensen was entitled to judgment against third-party defendants Harward, Harrison and Soule for conversion of the $8,400 real estate commission. The court dismissed Harward's claims, no cause of action, and dismissed Jensen's claim against Taylor.

Jensen asked the court to declare the listing agreement void. The trial judge found the listing agreement to be a valid contract between Taylor and Jensen.

The evidence adduced at trial showed the listing agreement to be deficient in the following ways: It was undated; the city, the state, the date and the name of the real estate company were omitted; the authorized signature for the real estate company was not added until after the lawsuit was filed; the duration (in months) the listing agreement was to remain in effect was omitted. Several handwritten entries appear on the Taylor original which do not appear on the Jensen copy, to wit: a "date listed" entry of "7–1–77" and a "date expired" entry of "12–1–77"; an entry "not on multiple" and an entry "Office Exclusive"; also an entry under "salesman" of "Bryce and Paul Taylor." It is not known who made the above entries or when they were made. Two facts about the listing agreement were undisputed. First, Taylor filled in all of the typewritten entries. Second, Marvin Jensen signed for Jensen Bros. Construction, Inc.

There are other evidences of the agreement between Taylor and Jensen besides the listing agreement. Taylor owned the lot on which the house was to be built. Jensen agreed to buy the lot from Taylor for a set price and build the house. Taylor's profit on the transaction was to be the six percent commission on the sale of the finished house. In pursuance of this agreement, Taylor deeded the lot to Jensen and received trust deeds back wherein the purchase price of the lot was to be paid on the sale of the house. As part of the transaction, Taylor purchased a policy of title insurance wherein Jensen was insured. Taylor subordinated its trust deed to Prudential Federal Savings and Loan Association so that Jensen could obtain construction financing. As a part of this agreement, Taylor prepared a listing agreement for the finished house and Jensen executed it. On March 17, 1977, Jensen, in a letter to Prudential, made it clear that there was a contract between them. It read, "We are joining with Taylor National Real Estate Company of Orem for this home. Taylor has purchased the lot and will subordinate to us, and we will build the home." There is ample evidence to support the court's finding that there was a valid contract between Taylor and Jensen. The evidence also supports the court's finding that Taylor exerted substantial efforts to procure a purchase of the Barrington House. Having found that a valid contract existed and that Taylor had performed its part of that contract, the court correctly granted judgment to Taylor on the contract.

The trial court found that Taylor, as listing agent for Jensen, failed in its fiduciary obligation to Jensen. It found that Taylor did not take reasonable and necessary measures to protect its real estate commission from Harward and Value Realty.

■ Taylor did not neglect its fiduciary responsibilities. The trial court's statement to the contrary cannot be reconciled with its other findings or with its judgment in favor of Taylor. Taylor's responsibilities to Jensen did not include the negotiation of a

commission split with Harward. According to the trial court, no custom or practice required Taylor to share its commission with Jensen; nor did the listing agreement so require. Taylor fulfilled its responsibilities under the agreement by exerting substantial efforts to sell the house, and it is entitled to judgment on that agreement.

While the trial court was correct in awarding judgment to Taylor, it erred in permanently staying execution of that judgment against Jensen. A party receiving a judgment is entitled to have that judgment enforced by the granting court.[1] That court, in its discretion, may temporarily stay execution in order to prevent injustice, but it may not negate its own judgment by indefinitely staying execution thereon.[2]

Rule 62(a), Utah Rules of Civil Procedure, provides:

> Execution or other proceedings to enforce a judgment may issue immediately upon the entry of the judgment, unless the court in its discretion and on such conditions for the security of the adverse party as are proper, otherwise directs.

An immediate execution is proper, therefore, unless the court authorizes a temporary stay of execution. Nothing in this rule contemplates an indefinite stay of execution on the judgment. An indefinite stay of execution is as if no judgment had been granted. This Court, in *Ketchum Coal Co. v. Christensen*, 48 Utah 214, 159 P. 541 (1916), stated:

> ... If, however, in any matter in litigation or dispute of which the inferior court has jurisdiction, it has regularly proceeded to judgment and has judicially determined and declared the rights of the parties to the proceeding, then the court may not exercise its discretion with regard to whether it will or will not enforce a judgment thus regularly entered. When the

judgment is once entered, and under the law is an enforceable judgment, the party in whose favor it is rendered has a clear right to have the same enforced, and if any one attempts to interfere with that right it is also the clear legal duty of the court, in case a proper application is made, to enforce the judgment.... [The] court may not arbitrarily or capriciously, or for any reason except a sufficient legal reason, refuse to act when the fact is conceded that the enforcement or the enjoyment of the fruits of the judgment, as the case may be, is denied. To permit such a course would be tantamount to permitting a court to enter a judgment but thereafter deny its enforcement.... [T]he law gives plaintiff the right to have the judgment enforced and imposes the duty upon the court to enforce it, and no discretion is vested in the court whether it will enforce it or not.

Even if a permanent stay on Taylor's judgment were procedurally acceptable, it could not be justified as a means of preventing injustice. Jensen gave Harward $8,400 in credit on the price of the house, knowing that it was contractually bound to pay that amount to Taylor only. The earnest money agreement between Jensen and Harward's company specifically provided that if Jensen had entered into an effective listing agreement with any other broker, no commission was due to Harward. In addition, Taylor had informed Jensen of its intention to collect the full commission unless Harward contacted Taylor concerning a commission split. Jensen was aware that no such contact had been made. Even if Jensen entertained a good faith belief that it was fulfilling its commission obligation by crediting the $8,400 to Harward, the trial court was not warranted in protecting Jensen from its contractual responsibilities at Taylor's expense. Jensen's recourse lies solely in the execution of its judgment

---

1.  *Johnson v. Johnson*, Alaska, 544 P.2d 65, 72 (1975); *Ketchum Coal Co. v. Christensen*, 48 Utah 214, 159 P. 541, 544 (1916).

2.  *Cutler Assoc., Inc. v. Merrill Trust Co.*, Me., 395 A.2d 453, 456 (1978); *Dibert v. Ross Pat-* *tern Foundry & Development Co.*, Ohio App., 81 Abs. 4, 160 N.E.2d 862, 863 (1957); *United States v. Denver and Rio Grande Western R. R. Co.*, 223 F.2d 126, 127 (10th Cir. 1955).

against Harward, which was correctly granted by the court on the basis of Harward's written promise to indemnify Jensen in the extent of any commission dispute between Harward and Taylor. The order of the trial court indefinitely to stay execution of the judgment against Jensen should be dissolved.

The contract between Taylor and Jensen included the following clause: "In case of the employment of an attorney to enforce any of the terms of this agreement, I agree to pay a reasonable attorney's fee and all costs of collection." Since Taylor has prevailed, it has the right to be awarded a reasonable attorney's fee. The trial court is directed to hold a hearing to determine what a reasonable fee would be and grant such to Taylor as part of its judgment.

■ The trial court also erred in denying Taylor a judgment lien upon Jensen's property. Under U.C.A., 1953, 78–22–1, a judgment automatically becomes a lien upon all nonexempt real property of the judgment debtor at the time it is docketed. Taylor's right to a judgment lien is unconditional and is not subject to alteration by a court on equitable grounds.[3] The court's attempted denial of this right was linked to its unauthorized stay on execution of Taylor's judgment and was based on the same rationale. Along with the stay of execution, this restriction on Taylor's lien should be stricken from his judgment.

The trial court granted Jensen an $8,400 judgment against Leon Harward, Jesse R. Harrison and William J. Soule and attorney's fees in the sum of $2,000 in the third-party complaint. This judgment has not been challenged on appeal and should be allowed to stand. At the closing in December, 1977, Harward withheld $8,400 of the sale price of the house. Since Jensen must pay it to Taylor, Harward should pay it to Jensen as part of the contract price.

■ Harward agreed to hold Jensen harmless "in any dispute arising from the commission disbursement either sales or listing commission." This Harward failed to do. The whole lawsuit arose out of Harward's refusal to settle the division of the commission between himself and Taylor. Under these circumstances, the trial court's award to Jensen of $2,000 for attorney's fees for Jensen's defending this action was proper.

■ Harward and his wife purchased the Barrington House for their own home. They executed a trust deed and note for $45,600 as partial payment of the purchase price. The due date of the note was May 1, 1978. Harward claimed this trust deed and note should be reformed to reflect Jensen's agreement to accept real property in lieu of cash. The trial court ruled against Harward and found no meeting of the minds of the parties on this issue. The facts amply support this finding. While Jensen agreed to look at property and consider accepting it in lieu of cash, it is clear that Jensen had the ultimate power to decide whether or not it would accept property in lieu of cash. The trust deed and note are thus enforceable according to their terms and the trial court's judgment should be enforced.

Harward made a claim against Jensen for damages flowing from the breach of an implied warranty that the house would be built in a workmanlike manner and would be suitable for habitation.

Testimony of several witnesses agreed that there was damage to the Barrington House. The cause of the damage was settling of the foundation. Damage consisted of drywall cracks, cracks in the brick, cracks in the garage cement floor, and doors that cracked and hung improperly. Harward's witness, Jim Loveland, testified the damage was $5,602.31. Marvin Wayne Jensen testified the damage wouldn't exceed $2,000, at most. In both findings of fact and conclusions of law, the court stated that:

JBC [Jensen] should repair stress cracks in the Barrington House family room, garage, and on the outside brick

3. *Belnap v. Blain*, Utah, 575 P.2d 696, 700 (1978); *Messenger v. Burns*, 86 Idaho 26, 382 P.2d 913, 914–15 (1963); *Boyle v. Baggs*, 10 Utah 2d 203, 350 P.2d 622, 624 (1960); *Savings & Loan Corp. v. Bear*, 155 Va. 312, 154 S.E. 587, 593 (1930).

veneer, and replace cement damage to the garage floor and driveway in estimated reasonable value of $2,000.00, or at JBC's option, JBC should allow $2,000.00 credit on the said Trust Deed Note owing by Leon Harward and Judith A. Harward pursuant to JBC's offer and consent in open court.

The trial court's amended judgment contains no provision for repairs or equivalent credit by Jensen as required by the above finding and conclusion. On remand, it should be amended to include such a provision.

■ Harward claims Jensen committed fraud in failing to disclose that the improvements in the subdivision had not been accepted by Orem City. The trial court found that there was "no actionable fraud by Jensen" as alleged by Harward.

The evidence supports the trial court's finding in this regard. Harward had the burden of proof. Harward never proved that Jensen knew that the improvements in the subdivision had not been accepted by Orem City or that Jensen made any representation about the status of the improvements in the subdivision with Orem City. Jensen was the builder of a home in the subdivision and not interested in the development of the subdivision or the construction of improvements therein. The status of the subdivision was as readily available to Harward as it was to Jensen. In addition, Harward was an experienced real estate man.

The decision of the trial court is hereby affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.

HALL, C. J., and STEWART and HOWE, JJ., concur.

OAKS, J., having disqualified himself, does not participate herein; CORNABY, District Judge, sat.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.