IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 12, 2001 Session

**STATE OF TENNESSEE v. ROY B. LIPFORD**

**Interlocutory Appeal from the Criminal Court for Shelby County**
**No. 97-13369, 70     John P. Colton, Jr., Judge**

---

**No. W1999-01737-CCA-R9-CD  - Filed July 27, 2001**

---

The issues in this interlocutory appeal by the state, as we view them, are straightforward:  (1) whether the Supreme Court of Tennessee has the authority by rule to prohibit a full-time municipal judge from representing a defendant or otherwise practicing law after 180 days from assuming judicial office; and (2) if so, whether the Supreme Court of Tennessee intended exactly what the rule says.  We conclude that it does and did.  We further conclude that a violation of this Supreme Court Rule is prejudicial to the judicial process, and the issue is not waived by the failure of the opposing party to request disqualification at its first opportunity to do so.  Accordingly, we reverse the judgment of the trial court which declined to disqualify defendant's attorney, a sitting judge, from further participation in this case.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission; Judgment of the Criminal Court Reversed; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., and CORNELIA A. CLARK, SP. J., joined.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and David B. Shapiro, Assistant District Attorney General, for the appellant, State of Tennessee.

Tarik B. Sugarmon, Memphis, Tennessee, for the appellee, Roy B. Lipford.

**OPINION**

**PROCEDURAL BACKGROUND**

The pertinent facts and procedural background are undisputed.  The Grand Jury of Shelby County, Tennessee, indicted the defendant, Roy B. Lipford, on December 18, 1997, for theft over $10,000 and extortion.  Tarik B. Sugarmon (hereinafter "Sugarmon") was retained to represent the

defendant. Sugarmon was subsequently appointed as a full-time judge of the Memphis City Court on October 7, 1998. The case was set for trial within 180 days of the date Sugarmon assumed judicial office; however, the case was continued due to the illness of the prosecuting attorney.[1] The case was reset for trial on July 13, 1999, well beyond 180 days from the date Sugarmon assumed judicial office.

On July 9, 1999, the state filed a motion to disqualify defense counsel, citing Tenn. Sup. Ct. R. 10, Canon 4G which allows a judge to continue to practice law in an effort to wind up his or her practice but "in no event longer than 180 days after assuming office." The trial court (1) noted that Tenn. Code Ann. § 17-1-105 allowed a judge to conclude cases in which he or she was previously employed prior to the judge's election; (2) concluded that the 180-day rule was not absolute and allowed for the consideration of other factors; (3) noted that Sugarmon had represented the defendant since the inception of the case in 1997; (4) assumed Sugarmon had been paid to represent the defendant; (5) noted that the state at the time of the last trial setting had knowledge that Sugarmon had been appointed to the bench, yet made no objection based on the 180-day limitation; (6) found that unforeseen circumstances had prevented Sugarmon from concluding this case within the 180-day period; (7) found the defendant would be unduly prejudiced by an order of disqualification; (8) required that the state refer to Sugarmon at trial as "Mr. Sugarmon" and not "Judge Sugarmon;" and (9) declined to disqualify Sugarmon from representation.

The state sought an interlocutory appeal pursuant to Tenn. R. App. P. 9, which was granted by the trial court and accepted by this court.

## SUPREME COURT RULE 10

Tenn. Sup. Ct. R. 10, Canon 4G provides in pertinent part as follows:

> A newly elected or appointed judge can practice law only in an effort to wind up his or her practice ceasing to practice law as soon as reasonably possible and in no event longer than 180 days after assuming office.

The Commentary to Canon 4G clarifies this limitation:

> The only law practice allowable is that which is necessary to wind up a law practice. Accordingly, no new cases may be accepted. The 180-day bright line rule in winding up a law practice does not

---

[1] The technical record does not contain any orders setting or continuing trial dates; however, the trial court's order of November 5, 1999, which declined to disqualify defense counsel, and the transcript of the hearing on this motion indicate the case was continued beyond the 180 days due to illness of the prosecuting attorney.

prohibit the judge from receiving fees after this deadline for services performed prior to the deadline. (Emphasis added).

The Code of Judicial Conduct applies to all officers who perform judicial functions, which would include a municipal judge. *See* Tenn. Sup. Ct. R. 10, Code of Judicial Conduct, Application of the Code of Judicial Conduct, Part A. Although a "continuing part-time judge" may practice law in certain instances, a full-time judge is not exempt from the restrictions set forth in Canon 4G. *Id.* at Part C.[2]

## SUPREME COURT AUTHORITY

### A. Standard of Review

A trial court's ruling on attorney disqualification will be reversed only upon a showing of an abuse of discretion. State v. Culbreath, 30 S.W.3d 309, 312-13 (Tenn. 2000). There is an abuse of discretion when the trial court applies an incorrect legal standard or reaches a decision which is against logic or reasoning that causes an injustice to the complaining party. State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999).

Furthermore, the Supreme Court of Tennessee has recently stated:

> This Court, however, occupies a unique position to administer the ethical conduct of Tennessee attorneys. "It is well settled that the licensing and regulation of attorneys practicing law in courts of Tennessee [are] squarely within the inherent authority of the judicial branch of government." Smith County Educ. Ass'n v. Anderson, 676 S.W.2d 328, 333 (Tenn. 1984). Pursuant to our inherent authority, we govern the discipline of attorneys in this state, Swafford v. Harris, 967 S.W.2d 319, 321 (Tenn. 1998), and are responsible for "prescribing and seeking to enforce and uphold the standards of professional responsibility." Petition of Tenn. Bar Ass'n, 539 S.W.2d 805, 810 (Tenn. 1976) (Harbison, J., concurring). Furthermore, this Court has "original and exclusive jurisdiction to promulgate [our] own Rules. [Our] rule making authority embraces the admission and

---

[2]Defendant asserts that his counsel is similar to a county judge who, by statute, is not precluded from practicing law except in certain instances. *See* Tenn. Code Ann. § 16-16-106. However, the office of county judge was effectively abolished by constitutional amendment with such duties transferred to the county executive. *See* Constitution of Tennessee, Article VII, § 1. The constitution does not vest any judicial authority in the county executive. Waters v. State ex rel., Schmutzer, 583 S.W.2d 756, 759-60 (Tenn. 1979). Probate and estate administration jurisdiction was transferred to the Chancery Court. *See* Tenn. Code Ann. § 16-16-201. Tenn. Code Ann. § 16-16-106 has no application to the case at bar.

supervision of members of the Bar of the State of Tennessee." Id. at 807.

As the above authorities suggest, this Court owes a special obligation to ensure proper application of our rules and administration of the legal profession. Our review of a lower court's interpretation of the ethical rules promulgated by this Court is plenary. See In re: Burson, 909 S.W.2d 768, 774 (Tenn. 1995); Belmont v. Bd. of Law Examiners, 511 S.W.2d 461, 462 (Tenn. 1974); Anderson, 676 S.W.2d at 333-34. Accordingly, we will closely scrutinize a trial court's disqualification of an attorney or that attorney's firm for an abuse of discretion arising from improper interpretation or application of our rules. Accord Cheves v. Williams, 993 P.2d 191, 205 (Utah 1999) ("The proper standard of review for decisions relating to disqualification is abuse of discretion. However, to the extent this court has a special interest in administering the law governing attorney ethical rules, a trial court's discretion is limited.").

Clinard v. Blackwood, ___ S.W.3d ___, ___, 2001 WL 530834, at *2 (Tenn. May 18, 2001).

## B. Analysis

Based upon these long established precedents, we conclude the Supreme Court of Tennessee has the inherent authority over the judicial branch of government and properly promulgated Rule 10 to uphold the standards of judges and those who practice law before the courts of this state.

We further reject defendant's argument that Tenn. Code Ann. § 17-1-105 authorizes Sugarmon to continue representation beyond the 180-day limit. Tenn. Code Ann. § 17-1-105 provides as follows:

No judge or chancellor shall practice law, or perform any of the functions of attorney or counsel, in any of the courts of this state, except in cases in which the judge or chancellor may have been employed as counsel previous to the judge's or chancellor's election.

Although this statute does not have a 180-day limitation, Tenn. Sup. Ct. R. 10 is more restrictive and takes precedence. To the extent that the statute may appear inconsistent or in conflict with Tenn. Sup. Ct. R. 10, the statute must yield to the inherent authority of the Supreme Court of Tennessee to regulate the conduct of judges and those who practice law in the courts of this state. *See generally* Clinard, ___ S.W.3d at ___, 2001 WL 530834, at *2. However, while the statute might be read as conflicting with Tenn. Sup. Ct. R. 10, we should not lightly presume that the legislature intended to usurp the role of the courts in exercising the judicial power of the state and should give all legislative enactments a strong presumption of constitutionality. State v. Mallard, 40 S.W.3d 473, 483 (Tenn.

2001). Therefore, in this case it is unnecessary to declare Tenn. Code Ann. § 17-1-105 unconstitutional. We simply conclude that Tenn. Sup. Ct. R. 10 provides restrictions in addition to those set forth in the statute.

## INTERPRETATION OF CANON 4G

Having concluded that the Supreme Court of Tennessee has the authority to regulate the extent to which a judge may practice law, we must examine Canon 4G in order to ascertain its meaning.

The practice of law by full-time judges has long been prohibited in every jurisdiction in the United States. *See* J. Shaman et al., **Judicial Conduct and Ethics** § 7.20 (3d ed. 2000). Tennessee's present Code of Judicial Conduct adopts the American Bar Association Model Code of Judicial Conduct in most respects. The ABA Model Code Canon 4G, however, does not have an express provision that authorizes the practice of law at any time after assuming judicial office. *Id.* at § 7.22 (noting the ABA Model Code has no rule authorizing the completion of cases). However, it is apparent that our supreme court understandably recognized the practical difficulties in winding up a law practice and struck the appropriate balance by allowing the winding up of a law practice, but "in no event longer than 180 days after assuming office." Canon 4G.

It is unnecessary to resort to detailed rules of interpretation in this case. The requirement that a newly elected or appointed judge wind up a law practice "as soon as reasonably possible and in no event longer than 180 days after assuming office" is unambiguous and absolute. The Commentary specifically provides that the 180-day rule is a "bright line rule." Accordingly, we can only conclude that the rule means what it says. Thus, defense counsel was in clear violation of Canon 4G by continuing his representation of the defendant beyond the 180-day limitation.

## WAIVER

Defendant contends the state waived the right to seek the disqualification of defense counsel since it did not request disqualification at an earlier date when the case was set for trial.[3] We reject this argument as it fails to recognize the nature of an ethical violation. It is the obligation of <u>counsel</u> to seek withdrawal, and the opposing party should not be forced to file a motion for disqualification. *See* Tenn. Sup. Ct. R. 8, Code of Professional Responsibility, DR 2-110(B)(2) (requiring "mandatory

---

[3] Sugarmon insists in his brief that on February 25, 1999, the trial date was continued until July 13, 1999, "even after discussion and consideration of the 180-day rule." He further contends the state voiced no objection to his continued representation at that time. The transcript of the February 25th hearing is not in the record before this court. Nevertheless, we are compelled to note that counsel's awareness of the 180-day rule at that time, failure to request withdrawal, and continued representation makes the violation more egregious rather than less so.

withdrawal" from employment if "[t]he lawyer knows or it is obvious that continued employment will result in violation of a Disciplinary Rule"). In the context of this case, a violation of Code of Judicial Conduct Canon 4G is a violation of a disciplinary rule. Defense counsel in this case apparently made no effort to withdraw in spite of his knowledge of the plain language of the rule.[4]

We further conclude that to allow a sitting judge to participate in a trial or otherwise continue to represent a defendant in blatant violation of Tenn. Sup. Ct. R. 10 would be inherently prejudicial to the judicial process. *See generally* Tenn. R. App. P. 13(b) (providing that even issues not presented for review may be addressed on appeal "to prevent prejudice to the judicial process"). Accordingly, the failure of the state to seek disqualification at an earlier time in no way waives the issue.

## PREJUDICE TO DEFENDANT

Defendant asserts he will be prejudiced by the disqualification of defense counsel as the trial court indeed found. Firstly, the record does not support a finding of prejudice. Furthermore, Canon 4G contemplates that withdrawal or disqualification will occur in all cases that extend beyond the 180-day limitation. Additionally, DR 2-110(B)(2) contemplates "mandatory withdrawal" in all cases where continued representation would be a disciplinary violation. The sitting judge in this case is not the only person who can represent the defendant. The fact that Sugarmon was presumably paid for representation and had represented the defendant from the inception of the case is irrelevant to the issue of disqualification. If Sugarmon was paid in advance for services rendered, he is required upon his mandated withdrawal to "refund promptly any part of a fee paid in advance that has not been earned." DR 2-110(A)(3). However, Sugarmon may be reasonably compensated for services rendered prior to the 180-day deadline. Canon 4G Commentary ("The 180-day bright line rule does not prohibit the judge from receiving fees after this deadline for services performed prior to the deadline.").

## CONCLUSION

The judgment of the trial court is reversed, and Tarik B. Sugarmon is disqualified from further representation of the defendant. The case is remanded for further proceedings.

---

[4] The Supreme Court of Tennessee has established a Judicial Ethics Committee whose purpose is to render opinions to requesting judges on proper professional conduct under the Code of Judicial Conduct. Tenn. Sup. Ct. R. 9, § 26.6. There is no indication that such an opinion was requested in this case. Had such an opinion been requested at the time the case was set beyond the 180-day limitation, this appeal may have been avoided.

_____
JOE G. RILEY, JUDGE