**2015 UT App 128**

## THE UTAH COURT OF APPEALS

HASSAN MARDANLOU,
Plaintiff and Appellee,
*v.*
ALI GHAFFARIAN AND NASRIN FAEZI,
Defendants and Appellants.

Opinion
No. 20120778-CA
Filed May 21, 2015

Third District Court, Salt Lake Department
The Honorable L.A. Dever
No. 980911308

Michael D. Zimmerman, Erin B. Hull, and
Noella A. Sudbury, Attorneys for Appellants

J. Kent Holland and John P. Bagley, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES JAMES Z. DAVIS and STEPHEN L. ROTH concurred.

VOROS, Judge:

¶1      The judgment on appeal was entered in 2004 and unconditionally affirmed in 2006. In 2013, the district court undertook, appellants contend, to alter the terms of that judgment. The principal question on appeal is whether the district court had jurisdiction to do so. We conclude that it did not and accordingly vacate the post-judgment rulings of the district court.

## BACKGROUND

¶2    In 1989, Ali Ghaffarian and his wife Nasrin Faezi (Defendants) established Access Auto as a wholesale vehicle business. In 1991, Defendants decided to rent a large lot (the Property) on State Street in Salt Lake City to expand their wholesale business into a retail business selling used vehicles. To "share some expenses" and "help[] each other," Defendants approached a friend, Hassan Mardanlou, about cosigning a lease on the Property. Mardanlou owned a wholesale vehicle business called M&M Motors. Defendants and Mardanlou cosigned a lease, which included renewal and future-purchase provisions. The parties shared the Property, but they maintained "two different dealership[s]."

¶3    In 1992, M&M Motors ran out of money to maintain inventory for its wholesale business. Defendants began paying Mardanlou as a salaried employee for Access Auto, and Mardanlou worked there as a car salesman and lot manager. In 1994, Defendants unilaterally exercised the option to purchase the Property. Mardanlou did not contribute to the down payment, nor did he make any mortgage payments on the Property. In 1997, Mardanlou terminated his employment with Access Auto.

¶4    The following year, Mardanlou sued Defendants, claiming partnership status in Access Auto and seeking money damages. In the 2002 trial, the district court concluded that Defendants and Mardanlou had indeed entered into an oral partnership agreement. It awarded Mardanlou "one-half the value of the [Property]," plus interest, "less any remaining outstanding mortgage related to the purchase" of the Property. In 2003, the district court entered a judgment requiring Defendants "to transfer to [Mardanlou] by deed one-half of the real [P]roperty known as Access Auto." It further noted that any "reallocation of debt or mortgage on said [P]roperty [would be] subject to further hearing."

¶5     On September 13, 2004, the district court entered an amended judgment (the 2004 Amended Judgment) concerning rents and offsets. The district court awarded Mardanlou rents from the date of dissolution of the partnership in 1997 through the date of the 2004 Amended Judgment. Defendants timely appealed.

*The First Appeal*

¶6     On appeal before this court, Defendants challenged the district court's ruling that they and Mardanlou had formed a partnership. *Mardanlou v. Ghaffarian* (*Mardanlou I*), 2006 UT App 165, ¶ 15, 135 P.3d 904, *overruled on other grounds by Ellsworth Paulsen Constr. Co. v. 51-SPR-LLC*, 2008 UT 28, 183 P.3d 248. Defendants also contended that the district court erred in awarding Mardanlou rents from the dissolution of the partnership in 1997 until the date of the 2004 Amended Judgment. *Id.* ¶ 22. We affirmed the district court's finding of an oral partnership between the parties. *Id.* ¶ 14. We also affirmed its award of rents to Mardanlou for "one-half the annual rental value of the Property," concluding that the record supported the district "court's award of rental value from 1997 to judgment." *Id.* ¶ 23. Defendants filed a petition for certiorari, which our supreme court denied. *Mardanlou v. Ghaffarian*, 150 P.3d 58 (Utah 2006).

*Post-Appeal Proceedings*

¶7     In 2008, after the appeal, Defendants transferred to Mardanlou by quitclaim deed "a one-half interest as tenant in common" in the Property. Defendants also paid Mardanlou net rents plus interest for rents accrued through the date of entry of the 2004 Amended Judgment.

¶8     In 2011, the district court ruled that the Property was still "partnership property," and that Defendants had "failed to present any case law, rule or statute that would alter the status of the Property as being held as a tenant in partnership."

¶9     In 2012, the district court ordered Defendants to prepare a claim of credits for the amounts he paid in maintenance and improvements, insurance, and taxes on the Property through the present. In this April 24, 2012 Ruling (the 2012 Ruling), the district court indicated that these credits would be set off against the rents plus interest that had accrued from the date of entry of the 2004 Amended Judgment through the present. Defendants remonstrated that the 2004 Amended Judgment required them to pay rents only until the date of the Amended Judgment, September 13, 2004. In response, the district court reconsidered and "clarifie[d]" the text of the 2004 Amended Judgment. In the 2012 Ruling, the court explained that the requirement that Defendants pay Mardanlou rents from November 7, 1997, "until the date hereof" did not mean until the date of the 2004 Amended Judgment. Instead, the court defined the period for which Defendants owed rents to Mardanlou as "beginning from November 7, 1997, until the completion of winding-up, settling of accounts, and distribution of assets." Based on this "clarifi[cation]," the district court entered a final order in March 2013 (the 2013 Order). That order awarded Mardanlou an additional $299,527.09 in rents accruing from the date of the 2004 Amended Judgment until the date of the 2013 Order. Defendants appeal.

ISSUES ON APPEAL

¶10     Defendants ask this court to vacate the 2013 Order. They offer three grounds for doing so.

¶11     First, Defendants contend that the district court lost jurisdiction over the case after it entered the 2004 Amended Judgment and this court affirmed that judgment on appeal in *Mardanlou I*, 2006 UT App 165, 135 P.3d 904.

¶12     Second, Defendants contend that even if the district court retained jurisdiction to award post-judgment rents, res judicata barred such an award.

¶13    Finally, Defendants contend that even if the district court had jurisdiction to award post-judgment rents and was free to do so under res judicata principles, the award of rents accruing after the 2008 conveyance of a tenancy in common in the Property constituted error. The award constituted error, Defendants argue, because tenants in common have no obligation to pay rents to one another under the circumstances presented here.

¶14    Because we agree with Defendants on their first contention, we need not address their second and third contentions.

ANALYSIS

¶15    Defendants contend that the district court lacked jurisdiction over the case after entering the 2004 Amended Judgment and after that judgment was unconditionally affirmed on appeal. Mardanlou responds that the law-of-the-case doctrine and the fact that the partnership has never been wound up bar Defendants' claim. Mardanlou further claims that we must affirm even if the district court lacked jurisdiction to alter or amend its judgment, because the district court here merely enforced, not altered, its judgment. We review the district court's determination on jurisdictional issues for correctness, giving no deference to the district court's decision. *See Johnson v. Johnson*, 2010 UT 28, ¶ 6, 234 P.3d 1100.

I. A District Court Lacks Jurisdiction to Amend a Final Judgment Unconditionally Affirmed on Appeal.

¶16    "[I]t is settled law that a [district] court is free to reassess its decision at any point prior to entry of a final order or judgment." *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 12, 24 P.3d 958 (citation and internal quotation marks omitted); *see also U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶¶ 55–56, 990 P.2d 945 (noting that district courts may ordinarily change the terms of a judgment before entering final judgment). However, "[a]s a general rule, unless control over [the judgment] has been

retained in some proper manner, . . . no final judgment can be amended after the term at which it was rendered or after it otherwise becomes a final judgment." *Frost v. District Court of First Judicial Dist.*, 83 P.2d 737, 740 (Utah 1938) (citation and internal quotation marks omitted).

> The [district] court cannot under the guise of correcting its record put upon it an order or judgment it never made or rendered, or add something to either which was not originally included although it might and should have so ordered or adjudged in the first instance. It cannot thus repair its own lapses and omissions to do what it could legally and properly have done at the right time.

*Id.* (citation and internal quotation marks omitted). Accordingly, any "variances or conflicts" over the language of the judgment "must be pointed out, and (by proper proceedings) remedied, while the [district] court still has jurisdiction of the cause."[1] *Id.* at 737.

¶17   "Generally, when a party files a timely notice of appeal, the court that issued the judgment loses jurisdiction over the matters on appeal." *Myers v. Utah Transit Auth.*, 2014 UT App 294, ¶ 15, 341 P.3d 935 (citation and internal quotation marks omitted); *see also Cheves v. Williams*, 1999 UT 86, ¶ 45, 993 P.2d 191 ("'This court has long followed the general rule that the [district] court is divested of jurisdiction over a case while it is under advisement on appeal.'" (quoting *White v. State*, 795 P.2d

---

1. Exceptions to this general rule include divorce and child-custody proceedings that involve the district court's exercise of continuing jurisdiction. *See, e.g.*, Utah Code Ann. § 30-3-5(8)(i)(i), (3) (LexisNexis 2013).

648, 650 (Utah 1990))).[2] However, "absent a stay of judgment either by the [district] court itself or by an appellate court pending appeal, a [district] court has jurisdiction to enforce its judgment." *Cheves*, 1999 UT 86, ¶ 48.

¶18    Under the law-of-the-case doctrine, "a decision made on an issue during one stage of a case is binding on successive stages of the same litigation." *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588. And "a district court's power to reconsider decided issues is limited when the case has been appealed and remanded." *Mid-America Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶ 13, 216 P.3d 352. "This aspect of law of the case doctrine is frequently referred to as the mandate rule." *Id*. "'The mandate rule, unlike the law of the case before a remand, binds both the district court and the parties to honor the mandate of the appellate court.'" *Id*. (quoting *IHC Health Servs.*, 2008 UT 73, ¶ 28). "Thus, the decisions of an appellate court become the law of the case and cannot be reconsidered on remand." *Id.*

II. The 2013 Order Exceeded the District Court's Jurisdiction.

¶19    Utah law distinguishes between enforcing a judgment and amending or altering a judgment. District courts possess jurisdiction to enforce a final judgment. *See Cheves*, 1999 UT 86, ¶ 52 (observing that an "initial action resulting in a final judgment and the subsequent action seeking enforcement of that

---

2. "As with many general rules, however, there are exceptions. Courts have concluded that even where a [district] court is otherwise divested of jurisdiction due to an appeal, the [district] court retains the power to act on collateral matters." *Saunders v. Sharp*, 818 P.2d 574, 577–78 (Utah Ct. App. 1991); s*ee also* Utah R. Civ. P. 59(e) (requiring that any motion to alter or amend a judgment be served no later than fourteen days after entry of judgment).

judgment are separate proceedings, each resulting in separate judgments"). But as we have discussed, once final, "a judgment[] is no longer open to any amendment, revision, modification, or correction which involves the exercise of the judgment or discretion of the court on the merits or matters of substance." *Richards v. Siddoway*, 471 P.2d 143, 145 (Utah 1970) (citation and internal quotation marks omitted).

¶20   Here, whether the district court properly exercised jurisdiction depends on whether the 2013 Order permissibly enforced, or impermissibly altered, the 2004 Amended Judgment.

¶21   The 2004 Amended Judgment awarded Mardanlou rents from the date of dissolution of the partnership in 1997 through the date of the 2004 Amended Judgment:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that [Defendants'] interest in the Property is subject to an equitable lien in favor of [Mardanlou], securing the obligation of [Defendants] to pay [Mardanlou] one-half the court-determined $83,500 annual rental value of the Property, pro-rated each month for the period November 7, 1997, *until the date hereof*, plus simple interest at the rate of 10% per annum from the first day of each month during this period, and thereafter at the rate of 3.29% . . . , until paid.

(Emphasis added.) Defendants appealed.

¶22   In *Mardanlou I*, we affirmed the district court's award of "one-half the annual rental value of the [P]roperty until the date judgment was entered." 2006 UT App 165, ¶ 23, 135 P.3d 904, *overruled on other grounds by Ellsworth Paulsen Constr. Co. v. 51-SPR-LLC*, 2008 UT 28, 183 P.3d 248. We referred to the "[district] court's award of rental value from 1997 to judgment," *id.* ¶ 23, and affirmed that Mardanlou's right to receive rents ran

from the partnership dissolution in 1997 to "the date of final judgment," as expressed in the 2004 Amended Judgment, *id.* ¶ 7. The district court's 2004 Amended Judgment fully and finally disposed of the rents issue. We affirmed that judgment unconditionally, and we remitted the case without remanding for further proceedings. *Id.* ¶ 25. Accordingly, the 2004 Amended Judgment was final, and the district court lacked jurisdiction to award further relief.

¶23 We now turn to the district court's 2013 Order to determine whether it permissibly enforced or impermissibly altered the terms of the 2004 Amended Judgment.

¶24 The 2013 Order relied upon the 2012 Ruling, which purported to clarify, and thus merely enforce, the 2004 Amended Judgment by interpreting the language to mean that rents were ongoing and due to Mardanlou until the date Defendants had paid all rents:

> The Court also clarifies its Amended Judgment of [September] 13, 2004, . . . securing the obligation of [Defendants] to pay [Mardanlou] one-half the court-determined $83,500 annual rental value of the Property, pro-rated each month for the period November 7, 1997, *until the date hereof* . . . .
>
> "Hereof" is defined as "of this thing (such as a provision or document)." *Black's Law Dictionary*, 731 (7th ed. 1999). Therefore, reading the phrase "until the date hereof" in context with the entire sentence, rental payments plus interest, are due to [Mardanlou] beginning November 7, 1997, until the completion of the winding-up, settling of accounts, and distribution of assets.

(Emphasis added.) The district court then interpreted the language to mean that rents were ongoing and due to Mardanlou until the date Defendants had paid all rents. The

2013 Order thus required Defendants to pay rents to Mardanlou beyond the September 13, 2004 date of the 2004 Amended Judgment in perpetuity "until the completion of the winding-up, settling of accounts, and distribution of assets."

¶25 This reading of the 2004 Amended Judgment in effect amended it by awarding relief not awarded in 2004 Amended Judgment itself. The 2004 Amended Judgment states that Defendants must pay "one-half the court-determined $83,500 annual rental value of the Property, pro-rated each month for the period November 7, 1997, *until the date hereof.*" (Emphasis added.) The clear meaning of "hereof" refers to the 2004 Amended Judgment, dated September 13, 2004. Thus, the district court granted rents through September 13, 2004. In *Mardanlou I*, we read the 2004 Amended Judgment in this manner and affirmed it without alteration. 2006 UT App 165, ¶¶ 7, 23–24.

¶26 Therefore, the 2013 Order attempting to award post-September 2004 rents did not enforce, but rather altered, the 2004 Amended Judgment. Because the 2004 Amended Judgment was a final judgment affirmed on appeal, the district court lacked jurisdiction to alter it. *See Mid-America Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶ 13, 216 P.3d 352; *Frost v. District Court of First Judicial Dist.*, 83 P.2d 737, 740 (Utah 1938). "A judgment or order entered by a court lacking subject matter jurisdiction is void and does not affect the rights of any party." *State v. Vaughn*, 2011 UT App 411, ¶ 12, 266 P.3d 202. Accordingly, the 2013 Order is void, and we vacate that order.

### III. The Law-of-the-Case Doctrine Does Not Bar Defendants' Appeal.

¶27 Mardanlou contends that the law-of-the-case doctrine bars Defendants' appeal. Under the law-of-the-case doctrine, "a decision made on an issue during one stage of a case is binding in successive stages of the same litigation." *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 (citation and internal quotation marks omitted). The doctrine "allows a court

to decline to revisit issues within the same case once the court has ruled on them." *Id.* "[T]he law of the case doctrine acts much like the doctrine of res judicata—furthering the goals of judicial economy and finality—but within a single case." *Id.*

¶28  Prior to an appeal, "reconsideration of an issue before a final judgment is within the sound discretion of the district court." *Id.* ¶ 27. But when a party appeals a final judgment, the mandate rule "dictates that pronouncements of an appellate court on legal issues in a case become the law of the case and must be followed in subsequent proceedings of that case." *Thurston v. Box Elder County*, 892 P.2d 1034, 1037–38 (Utah 1995). "The lower court must not depart from the mandate, and any change with respect to the legal issues governed by the mandate must be made by the appellate court that established it or by a court to which it, in turn, owes obedience." *Id.* at 1038. "Thus, the decisions of an appellate court become the law of the case and cannot be reconsidered on remand." *Mid-America Pipeline Co.*, 2009 UT 43, ¶ 13.

¶29  Mardanlou relies on the 2004 Amended Judgment as affirmed on appeal as the law of the case, arguing that "[t]he mandate rule binds the [district] court and this appellate court to prior appellate rulings [in the same case] should the case return on appeal." We agree. But this argument cuts against Mardanlou. As we have explained, the 2004 Amended Judgment awarded pre-judgment rents only, and our opinion in *Mardanlou I* affirmed an award of "one-half the annual rental value of the [P]roperty until the date judgment was entered." 2006 UT App 165, ¶ 23, 135 P.3d 904, *overruled on other grounds by Ellsworth Paulsen Constr. Co. v. 51-SPR-LLC*, 2008 UT 28, 183 P.3d 248. As we explained above, the district court lacked jurisdiction to expand the relief granted in the 2004 Amended Judgment to award a portion of post- as well as pre-judgment rents. The law of the case therefore favors Defendants, not Mardanlou.

IV. The 2012 Ruling Exceeded the District Court's Jurisdiction.

¶30    Finally, Defendants ask that we "vacate the [district] court's ruling declaring the parties 'tenants in partnership.'" The ruling in question is the 2012 Ruling.

¶31    A lot happened between 2004 and 2014. The district court entered a final judgment, the 2004 Amended Judgment. This judgment ordered Defendants to "transfer by deed" to Mardanlou "an undivided one-half interest" in the Property; ordered Mardanlou to reimburse Defendants in the amount of one-half of the $663,414.90 that Defendants had paid for the Property; and ordered Defendants to pay Mardanlou one-half of all rents received through the date of entry of judgment. Finally, it ordered "that any and all remaining claims in this action are dismissed with prejudice."

¶32    We affirmed the 2004 Amended Judgment in *Mardanlou I*. *See* 2006 UT App 165, ¶ 23. In 2008 Defendants transferred by deed to Mardanlou "a one-half interest as tenant in common" in the Property. In addition, Defendants paid rents due through the date of the 2004 Amended Judgment, including post-judgment interest.

¶33    But in a series of orders culminating in the 2012 Ruling, the district court ruled that the parties' partnership had not been wound up or terminated, ordered the parties to wind up the partnership, declared the parties tenants in partnership, and awarded Mardanlou a share of rents paid after entry of the 2004 Amended Judgment.

¶34    As explained above, once the district court entered the 2004 Amended Judgment and this court unconditionally affirmed it, the district court lost jurisdiction to act other than to enforce that judgment. *See Cheves v. Williams*, 1999 UT 86, ¶ 52, 993 P.2d 191. By 2012, the 2004 Amended Judgment had been satisfied and thus required no enforcement. The 2004 Amended Judgment ordered Defendants to "transfer by deed" to Mardanlou "an undivided one-half interest" in the Property.

After the judgment was affirmed on appeal, Defendants did transfer by deed to Mardanlou an undivided one-half interest in the Property. In addition, Defendants paid to Mardanlou a share of pre-judgment rents together with pre- and post-judgment interest. The 2004 Amended Judgment required nothing more of Defendants and in fact dismissed any and all remaining claims with prejudice.

¶35   But the 2012 Ruling purported to grant further relief. It adjudicated the status of the parties in 2012 with respect to the former partnership, it ordered the parties to wind up the partnership, and it required Defendants to pay Mardanlou a portion of post-judgment rents. The 2004 Amended Judgment awarded none of this relief. The district court thus lacked jurisdiction to grant this relief in 2012, and its ruling purporting to do so is void. Accordingly, we vacate the district court's 2012 Ruling.[3]

CONCLUSION

The April 24, 2012 Ruling and the March 20, 2013 Order are hereby vacated.

--------

3. Although we vacate the court's 2012 Ruling, we understand why the district court would enter it. By 2012, the dispute had been in litigation for over a decade. The district court read the 2004 Amended Judgment to grant a share of post-2004 rents. And seeing Defendants' refusal to pay those rents and participate in mediation concerning disposition of the Property, the district court understandably concluded that the it had "provided the parties multiple opportunities to wind up the affairs of the partnership, but nothing has been accomplished to date." In the 2012 Ruling, the district court attempted to finally resolve the parties' war of attrition.