**2025 UT App 42**

## THE UTAH COURT OF APPEALS

NORTH PARK HOLDINGS LLC,
Appellant,
*v.*
DUKE RENTAL CO. LLC,
Appellee.

Opinion
No. 20230989-CA
Filed March 27, 2025

First District Court, Logan Department
The Honorable Spencer D. Walsh
No. 210100354

Joseph M. Chambers, Attorney for Appellant

Matthew N. Evans and Jacob G. Roberts,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES RYAN D. TENNEY and AMY J. OLIVER concurred.

HARRIS, Judge:

¶1     North Park Holdings LLC (North Park) sued an adjoining landowner, Duke Rental Co. LLC (Duke), in an attempt to resolve a dispute about the scope of an easement Duke holds over North Park's property. But the district court dismissed North Park's complaint as a sanction for North Park's failure to meet the court's specific deadline for it to pay a roughly $8,000 attorney fees award that the court had ordered earlier in the case related to a lis pendens that North Park had placed on Duke's property.

¶2     North Park appeals both the dismissal of its lawsuit as well as the propriety of the attorney fees award. It asserts that the district court had no jurisdiction—due to the temporary pendency of an interlocutory appeal—to issue the sanctions order

dismissing its complaint. And it complains that the court's underlying fees award was improper because the court abused its discretion in determining that North Park had no substantial justification for filing the lis pendens. We disagree with North Park on both counts and therefore affirm the court's orders.

BACKGROUND

¶3      North Park owns property that is bordered on the south and west by Duke's property. Historically, Duke's property consisted of two separate parcels, one of which—the western one, which would have been otherwise landlocked—had been granted an easement over an eighteen-foot-wide corridor of North Park's parcel for the purpose of ingress and egress. The easement runs along the south edge of North Park's property, along the boundary with Duke's southern parcel. Duke's predecessor-in-interest purchased both the western and the southern parcels and combined them, and it later conveyed the larger unified parcel to Duke. Because the southern parcel was never landlocked, Duke's combined larger parcel is not landlocked.

¶4      For many years, a fence existed on or near the southern boundary of North Park's property, where that parcel abuts Duke's property. Just north of that fence sits the eighteen-foot corridor of North Park's property that is subject to the Duke easement. Duke took steps to develop its combined parcel, and the relevant municipality informed Duke that, in order to undertake the type of development it wanted, it needed a thirty-foot-wide access lane. Without seeking North Park's permission, Duke proceeded to tear down the historical fence that had existed between its property and North Park's, and it created a thirty-foot-wide access lane that consisted of twelve feet of its own property plus the eighteen feet on the North Park side of the line that is subject to the easement.

¶5      North Park objected to Duke's actions and later sued Duke, asserting that Duke had trespassed on its property and that it had improperly used and expanded its easement. Specifically, North Park sought (1) "a declaration that it has a recognized property interest in the fence," (2) damages for trespass, (3) attorney fees, and (4) an injunction requiring Duke to restore the fence and preventing Duke from "expanding" the easement to benefit the entire unified parcel. A few months after filing its complaint, North Park filed a lis pendens on Duke's property, asserting that the lawsuit it had filed "affects the title to, or the right to possession of," Duke's property.

¶6      Later, Duke asked North Park, in a written letter between counsel, to "immediately remove the lis pendens," asserting that North Park had "absolutely no interest in [Duke's] property" and that, if the lis pendens were not removed soon, Duke would file a motion asking the court to remove it and would seek attorney fees. After North Park took no immediate action to remove the lis pendens, Duke filed a motion for release of the lis pendens and for attorney fees. Shortly thereafter, and before filing any opposition to Duke's motion, North Park released the lis pendens. The next day, however, North Park filed a memorandum in opposition to Duke's motion, asserting that its lis pendens had been properly filed and opposing any award of attorney fees.

¶7      After a hearing, the district court granted Duke's motion, issuing a written order that "release[d] the lis pendens if it [was] not already released," and stating in an oral ruling that North Park "did not act with substantial justification in filing the lis pendens because the litigation relates to the scope of [Duke's] easement, not Duke's title to or possession of [its] real property." Later, the court issued a separate order granting Duke's request for attorney fees, and in that same order it dismissed several—but not all—of North Park's causes of action on summary judgment. The court later quantified that attorney fees award, ordering North Park to pay Duke $8,130.50.

¶8 About two months then went by, and North Park took no action to pay the awarded attorney fees, apparently believing that it had no obligation to pay until after entry of a final judgment, either in the case as a whole or as to the fees specifically. Duke then filed a motion for an order requiring North Park to show cause why it should not be held in contempt for not complying with the order commanding it to pay attorney fees to Duke. North Park filed a lengthy memorandum in opposition to the motion, asserting (among other things) that "no enforcement of the order can take place until the case is concluded and the judgment is a final judgment." After full briefing and oral argument, the court declined Duke's invitation to hold North Park in contempt, finding that North Park's failure to comply with its order was not willful. But the court entered another order—dated June 2, 2023—clarifying that its intent in entering the original attorney fees order was that the order "was to be complied with as a final judgment." Indeed, it stated that its earlier order commanding North Park to pay attorney fees was to be considered "a final judgment . . . in accordance with Rule 54(b) of the Utah Rules of Civil Procedure." And it gave North Park a specific deadline by which it must pay the attorney fees: July 24, 2023.

¶9 Thereafter, North Park filed an appeal from the June 2 order, but it did not seek any stay of the court's order commanding it to pay the fees by July 24. At that point, the district court case was not over; indeed, at least one of North Park's causes of action remained pending. But North Park considered the June 2 order immediately appealable pursuant to rule 54(b). A few weeks later, on August 31, this court dismissed North Park's appeal, concluding that the order "was improperly certified under rule 54(b)."

¶10 While North Park's rule 54(b) appeal was pending in this court, July 24 came and went, and North Park failed to pay Duke the amount ordered. On August 2, Duke filed another motion for an order requiring North Park to show cause why it should not be

held in contempt for not paying the ordered attorney fees. Duke asserted that North Park's continued failure to pay the fees—even after the court's second order and the imposition of a deadline—constituted a knowing and willful violation of the court's order. As a possible contempt sanction, Duke proposed that the court "enter default against" North Park. Despite being served with a copy of the motion, North Park filed no opposition to it. After the time for the filing of any opposition memorandum had passed, Duke submitted its motion for decision, and it submitted a proposed order holding North Park in contempt of court for refusing to pay the attorney fees award, and stating that, as a sanction, its complaint be stricken and all of its remaining claims be "dismissed with prejudice." About a week later, on August 28, after receiving no objection to the proposed order from North Park, the district court signed the order, finding that North Park "willfully and knowingly refused to comply" with the court's order and sanctioning North Park by striking its complaint and dismissing all of its causes of action that remained pending. The court later entered judgment in Duke's favor.

## ISSUES AND STANDARDS OF REVIEW

¶11    North Park now appeals, and it challenges two different rulings made by the district court. First, it challenges the court's order dismissing its remaining claims[1] as a sanction for its failure to comply with the attorney fees order. As we explain later, North

---

1. In its initial order granting Duke's motion for release of the lis pendens, the district court also granted Duke's motion for partial summary judgment on three of North Park's causes of action. As we understand it, North Park does not appeal the dismissal of those three causes of action on summary judgment, and instead limits its appellate challenge to the court's dismissal, as a sanction, of its claims that remained pending after the earlier summary judgment dismissal.

Park failed to preserve any non-jurisdictional objection to that order. And we review its jurisdictional challenge for correctness. *See Summerhaze Co. v. Federal Deposit Ins. Corp.*, 2014 UT 28, ¶ 8, 332 P.3d 908 ("Whether a district court has subject matter jurisdiction is a question of law and we review the district court's determination for correctness." (cleaned up)).

¶12    Second, North Park challenges the district court's attorney fees order, asserting that the award of fees was improper. In this case, that question turns on whether North Park "acted with substantial justification" in filing the lis pendens against Duke's property. *See* Utah Code § 78B-6-1304(8). The relevant statute treats this determination as a factual finding. *See id.* ("A court shall award costs and attorney fees to a prevailing party . . . unless the court *finds* that . . . the nonprevailing party acted with substantial justification . . . ." (emphasis added)). Accordingly, we review the district court's "substantial justification" finding as we would any other factual finding, and we will not reverse unless the finding is "clearly erroneous," *see Huck v. Ken's House LLC*, 2022 UT App 64, ¶ 11, 511 P.3d 1220 (cleaned up). "To qualify as clearly erroneous a [district] court's findings must be either against the clear weight of the evidence or must induce a definite and firm conviction that a mistake has been made." *Id.* (cleaned up).

ANALYSIS

I.  The Sanctions Order

¶13    North Park's first challenge is to the district court's August 28 order dismissing its remaining claims as a sanction for its failure to comply with the court's order commanding it to pay attorney fees to Duke.

¶14    We note at the outset that North Park—by failing to lodge any opposition to Duke's second motion for an order to show

cause—has failed to preserve for our review any non-jurisdictional objection to the court's sanctions order. "Our preservation requirement is well-settled: we require parties to have raised and argued before the district court the issue that they raise and argue before us on appeal, and if a party does not, it has failed to preserve the issue." *True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶ 23, 427 P.3d 338 (cleaned up). A party seeking review of an unpreserved issue "must establish the applicability of one of the preservation exceptions to persuade an appellate court to reach that issue." *Id*. ¶ 29 (cleaned up). And here, at least with regard to non-jurisdictional objections, North Park does not assert that any of the exceptions to our preservation rules apply.

¶15    But North Park can assert subject-matter-jurisdiction-based objections to the sanctions order, even if those objections are unpreserved. *See In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702 ("One exception to the preservation requirement is subject matter jurisdiction. Because subject matter jurisdiction goes to the heart of a court's authority to hear a case, . . . it is not subject to waiver and may be raised at any time, even if first raised on appeal."). In this vein, it asserts that the sanctions order is jurisdictionally infirm because, at the time that order was entered, North Park's rule 54(b) appeal was still pending, a fact that North Park believes deprived the district court of subject matter jurisdiction to enter the sanctions order. We disagree.

¶16    To be sure, a district court "loses jurisdiction over the matters on appeal" once an appeal is filed. *See Thorp v. Charlwood*, 2021 UT App 118, ¶ 38, 501 P.3d 1166 (cleaned up). But the scope of a rule 54(b) appeal is by definition narrow—only those matters certified as final and appealable are part of the matters on appeal in such cases. It follows, then, that when a district court certifies matters as final pursuant to rule 54(b), it retains jurisdiction over all remaining non-certified issues in the case. *See White v. State*, 795 P.2d 648, 650 (Utah 1990) ("[W]here the [district] court has, pursuant to [rule] 54(b), certified as final a judgment against one

party in a multi-party action, the remainder of the action remains in the [district] court and is not necessarily affected by the appeal."); *Williams v. Bench*, 2008 UT App 306, ¶ 16, 193 P.3d 640 (noting that, with regard to appeals based on "rule 54(b) certifications," district courts retain "jurisdiction to proceed with the claims remaining unadjudicated" (cleaned up)).

¶17 In this case, the district court certified only the attorney fees award for immediate appealability. Under these circumstances, the court retained jurisdiction over all remaining claims in the case, including North Park's substantive claims that had survived the earlier summary judgment ruling. For this reason alone, the court had jurisdiction to consider whether to dismiss those claims as a sanction for North Park's behavior.

¶18 Moreover, even with regard to the fees order that had been certified for appeal, the district court retained jurisdiction to consider issues related to enforcement of that order. Even after an appeal is filed, a district court "retains the power to act on collateral matters," *Thorp*, 2021 UT App 118, ¶ 38 (cleaned up), including—absent imposition of a stay of enforcement—matters involving the enforcement of the judgment that is the subject of the appeal, *see, e.g.*, *Mardanlou v. Ghaffarian*, 2015 UT App 128, ¶ 19, 351 P.3d 114. Our caselaw "distinguishes between enforcing a judgment and amending or altering a judgment." *Id*. While a judgment that is the subject of an appeal "is no longer open to any amendment, revision, [or] modification" by a district court while that appeal remains pending, district courts "possess jurisdiction to enforce" the judgment. *Id*. (cleaned up); *see also Cheves v. Williams*, 1999 UT 86, ¶ 46, 993 P.2d 191 (stating that, "[i]n order to stay enforcement of a judgment pending appeal," a litigant must "apply to the [district] court for a stay," and that without such a stay, "the judgment is immediately enforceable"); Utah R. App. P. 8(a)(1)(A) ("A party must ordinarily move *first in the [district] court* for . . . a stay of the judgment or order." (emphasis added)); 4 C.J.S. *Appeal and Error* § 512 (2024) (citing cases from

several states, including Utah, and declaring that "[i]n the absence of the posting of a supersedeas bond or the granting of a stay by the court, a judgment or final order retains its validity and may be enforced by execution during the pendency of the appeal"). In this case, even assuming—for purposes of the discussion only—that the attorney fees order was a final appealable order, Duke's efforts to have North Park sanctioned for its noncompliance with the attorney fees order involve collateral matters, akin to enforcement of a judgment, over which a district court retains jurisdiction even while an appeal is pending.[2]

¶19    For all of these reasons, we conclude that—the rule 54(b) appeal notwithstanding—the district court retained jurisdiction over North Park's remaining claims as well as jurisdiction to consider matters related to enforcement of the attorney fees order, and that it therefore had jurisdiction to enter the August 28 sanctions order. On that basis, we reject North Park's jurisdictional objection and affirm the sanctions order, including that order's dismissal of all of North Park's remaining claims.

## II. The Attorney Fees Order

¶20    North Park's second challenge is to the attorney fees order that it attempted to appeal earlier. It is entitled to appeal that order now, because all of the remaining claims have been resolved and a final order has been entered. The court entered the attorney

---

2. North Park never sought a stay of enforcement of the attorney fees order. In its briefing here on appeal, North Park indicates that it would have done so had Duke pursued more traditional enforcement avenues, such as "seeking a writ of execution or garnishment." *See* Utah R. Civ. P. 62 (providing the procedure by which a party can request a "[s]tay of proceedings to enforce a judgment or order"). But North Park offers no reason why it did not seek a stay in response to Duke's sanctions motion; indeed, it offers no reason why it made no response at all to that motion.

fees order after concluding that North Park had improperly filed a lis pendens on Duke's property, and after finding that North Park had not "acted with substantial justification" in doing so. North Park challenges the court's attorney fees award, but it does not challenge the amount or the reasonableness of the award. Instead, North Park asserts that no award should have been entered in the first place because, in its view, it acted with substantial justification in placing the lis pendens on Duke's property. Thus, we understand North Park's challenge to be limited to the court's "substantial justification" finding, which (as noted, *supra* ¶ 12) we will disturb only if we conclude that it is clearly erroneous. For the reasons discussed, we conclude that North Park has not carried its burden of persuading us that the court's finding was clearly erroneous.

¶21    Under Utah law, "[a]ny party to" a lawsuit filed in Utah "that affects the title to, or the right of possession of, real property may file a notice of pendency of action" and "record a copy of the notice . . . with the county recorder in the county where the property . . . is located." Utah Code § 78B-6-1303(1). This "notice of pendency of action" is "commonly referred to as a lis pendens," *see Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, No. 1:20-cv-00089, 2021 WL 3726607, at *4 (D. Utah Aug. 23, 2021); *accord Allen v. Ciokewicz*, 2012 UT App 162, ¶ 4, 280 P.3d 425, and we have emphasized that such documents "may only be filed in connection with an action (1) affecting the title to real property, or (2) affecting the right of possession of real property," *see Winters v. Schulman*, 1999 UT App 119, ¶ 21, 977 P.2d 1218 (cleaned up).

¶22    After a lis pendens has been filed, any party to the lawsuit or any "person with an interest in the real property affected by the notice" may file a motion asking the court "to release the notice." Utah Code § 78B-6-1304(1). The court "shall order" the notice released if it "finds that the claimant has not established by a preponderance of the evidence the validity of the real property

claim that is the subject of the notice." *Id.* § 78B-6-1304(2). And the court "shall award costs and attorney fees to a prevailing party on any" such motion, unless it "finds that . . . the nonprevailing party acted with substantial justification." *Id.* § 78B-6-1304(8).

¶23    In this case, North Park filed a lis pendens against Duke's property, asserting that the parties' lawsuit regarding the scope of Duke's easement over *North Park*'s property was a lawsuit "that affect[ed] the title to, or the right of possession of," *Duke*'s real property. *Id.* § 78B-6-1303(1). Duke responded by asking North Park to remove the lis pendens, asserting that North Park had "absolutely no interest in [Duke's] property." After North Park took no immediate action to remove the lis pendens, Duke filed a motion for release of the lis pendens and for attorney fees. Soon thereafter, North Park released the lis pendens. The district court then determined that—given North Park's removal of the lis pendens—Duke was the "prevailing party" on its motion, and it awarded attorney fees after finding that North Park had not acted with substantial justification in placing the lis pendens on Duke's property. Key to the court's finding was its determination that "the litigation relates to the scope of [Duke's] easement" over North Park's property, "not Duke's title to or possession of [its own] real property."

¶24    North Park now challenges the "substantial justification" finding. In support of its challenge, it asserts that Duke had no right to expand the scope of its easement to benefit its entire combined parcel (rather than just its western parcel). But it nowhere attempts to rebut or engage with Duke's assertion—and the district court's key determination—that, even assuming Duke overburdened its easement over *North Park*'s property, a lawsuit about the scope of that easement does not impact "title to, or the right to possession of," *Duke*'s property. *See id.*

¶25    On appeal, a party's "[p]rincipal briefs must contain . . . [a]n argument" that explains, "with reasoned analysis supported

by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). This means that "appellants carry the burden to persuade a reviewing court through reasoned, supported argument that the district court committed harmful, reversible error—a burden that necessarily requires the appellant to address the reasoning and basis of the district court's ruling and to explain why that court got it wrong." *Big Game Forever v. Peterson*, 2024 UT App 78, ¶ 19, 551 P.3d 411 (cleaned up); *see also Pinder v. Duchesne County Sheriff*, 2020 UT 68, ¶ 36, 478 P.3d 610 ("It is the appellant's job to tell us where and how the district court went wrong."). If an appellant "does not meaningfully engage with the district court's reasoning," that appellant "falls short of demonstrating any error on the part of the district court." *Big Game Forever*, 2024 UT App 78, ¶ 19 (cleaned up); *see also Pinder*, 2020 UT 68, ¶ 36 ("An appellant who fails to adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal." (cleaned up)).

¶26 Such is the situation here. On appeal, North Park focuses the entirety of its argument on its assertion that Duke's expanded use of the easement "overburdens the servient estate as a matter of law." However, the issue before us on appeal involves more than mere assessment of the scope of the easement and whether Duke overburdened it; rather, the overarching issue is whether North Park had a substantial justification for filing the lis pendens. For purposes of our analysis, we assume—without deciding—that Duke *did* overburden its easement. But it does not necessarily follow, from that proposition, that North Park had the right to file a lis pendens on Duke's property; indeed, the district court determined that litigation about the scope of Duke's easement over *North Park*'s property did not concern the title to, or the possession of, *Duke*'s property. And here on appeal, North Park makes no effort to engage with that determination. Its failure to make that effort compels us to conclude that North Park has not carried its burden of persuading us that the district court's

reasoning was incorrect. We therefore affirm the court's determination on that basis.[3]

CONCLUSION

¶27    We affirm the district court's sanctions order because the court had jurisdiction to enter it and because North Park failed to preserve any non-jurisdictional objections to it. And we affirm the court's attorney fees order because North Park has not carried its burden, here on appeal, of demonstrating that the district court's "substantial justification" determination was clearly erroneous.

——————

3. Indeed, we stop short of making a precedential determination on the merits of the issue. We also note that some courts have reached a conclusion at odds with the one reached by the district court here. *See, e.g., Kendall-Brief Co. v. Superior Court*, 131 Cal. Rptr. 515, 519 (Cal. Ct. App. 1976) (holding that litigation about the scope of an easement over a servient parcel did concern "the right of possession of" the dominant parcel). But given the lack of robust adversarial briefing on the point in this case, we reach no conclusion on the merits of the issue, and we leave the question open for resolution in a future case.